IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>ALEXANDER A. OLAVE,<br>Defendant. | Case No. 1:26-cr-102 |

**STATEMENT OF FACTS**

The United States and the defendant, Alexander A. Olave (hereinafter, "the defendant"), agree that, at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. In October 2020, the defendant registered a company with the Virginia State Corporation Commission called AO Elite LLC ("AO Elite"), and listed himself as the company's chief executive officer. The defendant initially listed an address in Alexandria, Virginia, as the principal office address for AO Elite; he later changed that to an address in Fairfax, Virginia; and both addresses are located in the Eastern District of Virginia.

2. Through AO Elite, the defendant offered his services in creating and maintaining "e-commerce" businesses for others. "E-commerce" businesses function as online storefronts, where individuals or businesses can feature the products they're selling, receive orders from customers, and accept electronic payments for those orders.

3. In or around February 2021, the defendant created a website for AO Elite where he advertised that a potential client could hire AO Elite to build an online storefront for the client, help the client identify products to sell on that storefront, coordinate with the suppliers of those

products to fulfill the orders placed on the storefront, advertise the storefront on other websites, and set up the payment system on the storefront. The contract between AO Elite and their clients required the clients to pay a flat fee to get the storefront created, and then to evenly split the net proceeds of the storefront's sales with AO Elite. The defendant's website advertised this as a "done-for-you" business model, wherein the client would pay the up-front fee, and then AO Elite would handle everything else pertaining to the creation and maintenance of the e-commerce business. The website also stated that AO Elite's headquarters was located in Fairfax, Virginia, within the Eastern District of Virginia.

4. At the time the defendant launched his website for AO Elite, before any client had hired AO Elite's services, he wrote and published numerous representations and promises on the website that were materially false and fraudulent, including:

a. The claim that AO Elite had been hired by "over 350+ digital business owners" who were using AO Elite's "proven process" to become owners of e-commerce businesses.

b. The claim that the "average profit margin" for these businesses was "40-60%."

c. The claim that AO Elite had built these hundreds of profitable e-commerce businesses by "using proven SOPs [standard operating procedures], same ones we used to make our seven-figure agencies' consulting and e-commerce businesses, all 23 of them."

d. The claim that AO Elite was "already crushing it for the first round of business owners who bought in. This is fact, not opinion."

e. The claim that AO Elite's "comprehensive done-for-you digital assets, marketing, and sales business growth systems have helped us and our partners generate our clients over $112 million in revenue collectively."

f. Images of graphs showing yearly sales from two e-commerce businesses that were supposedly created by AO Elite; one graph showed approximately $3 million in yearly sales and the other graph showed approximately $17 million in yearly sales.

5. In reality, the defendant knew that none of those statements were true. When the defendant wrote and published these statements and images on the AO Elite website, AO Elite had never been hired by any client and had not created a single online storefront. Instead, the defendant had copied these claims and graphs from the websites of other businesses.

6. Between April 2021 and April 2022, approximately 100 clients hired AO Elite to build and maintain online storefronts for them. When potential clients expressed interest in hiring AO Elite, the defendant would routinely send, or direct his employees to send, an email to the potential clients with a link to an online "testimonial" video. The defendant portrayed this video as depicting an AO Elite client, when, in reality, the defendant knew that this video had been filmed for a different company, and that the person giving the testimonial had no knowledge of, or affiliation with, AO Elite or the defendant. The defendant also arranged to have other people film testimonial videos that gave potential clients the false impression that AO Elite had created successful e-commerce businesses for them, and the defendant distributed those videos online, as well.

7. During that same period (between April 2021 and April 2022), AO Elite failed to build the vast majority of the online storefronts that it had been hired to create. The few storefronts that were successfully created had few, if any, sales. Nevertheless, the defendant maintained the

false representations on AO Elite's website and continued to distribute fraudulent testimonial videos online. When clients contacted AO Elite to complain, the defendant communicated with them by phone, email, or an online messaging service. During those communications, the defendant routinely gave false excuses, made false promises, and made material omissions related to the true status of the client's storefront. The defendant sent these communications from the Eastern District of Virginia and elsewhere, and they were received by clients in locations throughout the United States.

8. Also during that period (between April 2021 and April 2022), the defendant took over $400,000 in client fees as a salary for himself, and he and others used those and other AO Elite funds (which were also drawn from client fees due to the lack of storefront profits) to rent luxury homes for himself and employees, and lease luxury vehicles.

9. In or around March 2022, AO Elite was approaching insolvency. In response, the defendant emailed a letter to all of AO Elite's clients stating that he was invoking the "force majeure" clause of their contract based on "unforeseen circumstances with international affairs," inflation, and "an unreliable market." According to the defendant's letter, by invoking the force majeure clause, the defendant was no longer bound to deliver to clients their storefronts or the guaranteed profits therefrom in the timeframe that the defendant had promised. In reality, the defendant knew that AO Elite's failure to deliver successful storefronts to its clients was not due to the reasons he stated in the letter.

10. In April 2022, after the defendant had sent the "force majeure" letter to AO Elite's clients, he continued to advertise, sign contracts, and accept payment from new clients, without disclaiming the representations and promises that the defendant had published online, and without

disclosing the true nature of AO Elite's operational capacity and financial situation. In total, AO Elite took in approximately $3.7 million from client fees between April 2021 and April 2022.

11. Between April 2022 and February 2024, the defendant continued to use electronic communications to respond to disgruntled clients. In those communications, the defendant made false claims and unfounded promises regarding the defendant's ability to pay them back or, alternatively, deliver the storefront that they had hired AO Elite to create. The defendant sent these communications from the Eastern District of Virginia and elsewhere, and they were received by clients in locations throughout the United States.

12. During that same period (between April 2022 and February 2024), the defendant created two additional companies—AcquireNExit LLC and AO Digital LLC. The business models of both businesses were virtually identical to that of AO Elite. The defendant copied many of the same false claims and misleading graphs from AO Elite's website onto the websites that he created for these other two businesses. During this time period, AcquireNExit made approximately $280,000 from client fees and AO Digital made approximately $88,000 from client fees.

**Conclusion**

13. This statement is being submitted to demonstrate that sufficient facts exist to establish that the defendant committed the offense to which he is pleading guilty. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

14. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Todd W. Blanche
Acting Attorney General

By: Jordan Harvey
Jordan Harvey
Assistant United States Attorney

Defendant's Signature: After consulting with my attorney, and pursuant to the plea agreement entered into this day between me, Alexander A. Olave, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that, had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 6/4/26

Alexander A. Olave

Defense Counsel's Signature: I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 6/4/26

Ann Mason Rigby
Counsel for the defendant